IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PATRICIA LOWE FARRIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE KROGER COMPANY, )<br>)<br>Serve: Corporation Service Company )<br>Bank of America Center, 16th Floor )<br>1111 East Main Street )<br>Richmond, VA 23219 )<br>)<br>and )<br>)<br>KROGER LIMITED PARTNERSHIP I, )<br>)<br>Serve: Corporation Service Company )<br>Bank of America Center, 16th Floor )<br>1111 East Main Street )<br>Richmond, VA 23219 )<br>)<br>Defendants. ) | Civil Action No: 7:16cv93 |

## COMPLAINT

The above-named Plaintiff, Patricia Lowe Farris, by counsel, states as her Complaint against Defendants The Kroger Company and Kroger Limited Partnership I (hereinafter "Kroger"), the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as amended by

1

the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII"). *See* 28 U.S.C. § 1331; 28 U.S.C. §1343(a); 42 U.S.C. §2000e-5(f); 42 U.S.C. §12117(a).

2. Due to its contacts within the Commonwealth of Virginia, Kroger avails itself to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of Kroger from which the cause of action arises, occurred in Roanoke, which is within the Western District of Virginia. *See* 28 U.S.C. §1391(b)(2).

3. Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission (Charge No. 438-2014-01247), received a Notice of Right to Sue, dated December 8, 2015, and files this action within 90 days of receipt of that notice.

## II. FACTUAL BACKGROUND

4. Ms. Farris is a female and current resident of Roanoke, Virginia.

5. Kroger is one of the world's largest grocery retailers with stores within the Commonwealth of Virginia and elsewhere.

6. At the time of her termination from employment/constructive discharge from Kroger in July of 2014, Ms. Farris was employed at The Kroger Company, Mid-Atlantic Division, located at 3631 Peters Creek Road, Roanoke, VA 24019-4002.

7. Ms. Farris began her employment with Kroger on March 18, 2013. Her job title during the entirety of her employment was "Organized Retail Crime

2

Investigator".

8. Ms. Farris performed her duties faithfully, diligently, and with competence during the entire length of her employment with Kroger.

9. Ms. Farris was never disciplined during her employment and the annual reviews she received indicated that she was meeting Kroger's legitimate business expectations.

10. Unfortunately, Ms. Farris was subjected to sexual harassment and a hostile work environment by her direct supervisor, Philip Caudery, during her employment.

11. Mr. Caudery was Ms. Farris' supervisor in that he was empowered by Kroger to take tangible employment action against Ms. Farris. Mr. Caudery directed Ms. Farris' work assignments and schedule, was responsible for completing or participating in her annual evaluations and reporting her work performance to other supervisory employees, and possessed the authority to discipline, promote, or even terminate Ms. Farris' employment.

12. Mr. Caudery frequently inappropriately addressed Ms. Farris as "baby", "honey", and/or "girlfriend".

13. Mr. Caudery referred to Ms. Farris as his "work wife" directly to her and also in front of co-workers.

14. Mr. Caudery frequently used the word "whore" to refer to Ms. Farris and suggested to Ms. Farris that other co-workers "knew her reputation" and considered her to be a "whore" as well. Upon information and belief, Mr.

3

Caudery frequently used the term "whore" to refer to Ms. Farris to other co-workers outside of her presence.

15. Ms. Farris felt uncomfortable with being addressed in the above-referenced manner, as detailed in paragraphs 12, 13, and 14, and repeatedly requested that Mr. Caudery cease utilizing this language.

16. Mr. Caudery often discussed with Ms. Farris his background and intentions regarding being unfaithful in his marriage, and asked Ms. Farris if she had ever "cheated" on her husband.

17. Mr. Caudery frequently referred to women in general as "cunts".

18. Mr. Caudery also discussed other distasteful and inappropriate topics. As one example, on one occasion Mr. Caudery stated that Ms. Farris "had [her] cherry popped" in West Virginia. Mr. Caudery made this statement in front of his direct supervisor, Dave Lyon, Kroger Division Loss Prevent Manager. Mr. Lyon did not reprimand Mr. Caudery. Ms. Farris was extremely distressed and embarrassed by this inappropriate comment.

19. On another occasion, Mr. Caudery advised Ms. Farris: "If you're going on the road [traveling], don't forget your condoms."

20. Mr. Caudery frequently assaulted and battered Ms. Farris by hugging her and kissing her on the cheek.

21. Mr. Caudery frequently assaulted Ms. Farris by attempting to kiss Ms. Farris on the lips in a romantic manner.

22. The aforementioned physical or attempted physical contact was unwanted and

4

absolutely unencouraged.

23. On multiple occasions, when Ms. Farris and Mr. Caudery were required to travel together for work, Mr. Caudery would improperly invite Ms. Farris to his hotel room.

24. On one occasion, Mr. Caudery advised Ms. Farris: "You need to meet me in my room to see a Power Point presentation." Ms. Farris entered Mr. Caudery's hotel room as directed, but there was no Power Point presentation presented. Rather, Mr. Caudery offered Ms. Farris alcohol and requested that she massage his knees. Ms. Farris left the hotel room immediately.

25. On other subsequent occasions, Mr. Caudery identified his hotel room number and directed Ms. Farris to "come to [his] room." On one occasion, Ms. Farris brought a witness with her when Mr. Caudery directed her to join him in his hotel room. Mr. Caudery stated, "I didn't know you were bringing company" and seemed angry at Ms. Farris.

26. Ms. Farris ultimately refused to enter Mr. Caudery's hotel rooms subsequent to these incidents.

27. Mr. Caudery appeared angry when Ms. Farris did not submit to his sexual advances or requests for sexual favors.

28. Mr. Caudery clearly attempted to engage Ms. Farris in an inappropriate sexual relationship and made Ms. Farris' submission to such conduct implicitly a term or condition of her employment.

29. Subsequent to Ms. Farris' unwillingness to engage in a sexual relationship with

5

him, Mr. Caudery retaliated against Ms. Farris by reporting her successful work as his own, attempting to find errors in her work even though her work performance was excellent, by ensuring that Ms. Farris was assigned a more rigorous and time consuming territory to cover, and by refusing to speak to her for days at a time. Mr. Caudery also attempted to sabotage Ms. Farris' work performance evaluations by failing to properly report her work activity.

30. Ms. Farris complained about Mr. Caudery's inappropriate conduct to Mr. Caudery's supervisor, Mr. Lyon, on multiple occasions including, but not limited to, in June and July of 2014.

31. Upon information and belief, Mr. Caudery and Mr. Lyon are friends and spend a significant amount of time socializing outside of work.

32. Ms. Farris complained to Mr. Lyon both verbally and in writing.

33. On or around June and/or July of 2014, Ms. Farris verbally complained about Mr. Caudery's inappropriate behavior to Mr. Lyon. Mr. Lyon responded to Ms. Farris by advising her to "get over it."

34. On or around July of 2014, Ms. Farris sent Mr. Lyon an email detailing certain inappropriate names Mr. Caudery called her and detailing a particular incident where, after an inappropriate comment was made during a meeting, Mr. Caudery came to Ms. Farris' desk, hugged her, kissed her on the cheek and said, "you know I still love you."

35. On or around July 20, 2014, Mr. Lyon and a representative from Human Resources investigated the matter and interviewed Ms. Farris about Mr.

Caudery's behavior.

36. Upon information and belief, during this time period, Mr. Caudery was also interviewed by Mr. Lyon and a representative from Human Resources.

37. During Ms. Farris' interview, Mr. Lyon was not impartial. Mr. Lyon expressed a reluctance to investigate Ms. Farris' concerns and even chastised Ms. Farris for sending the above-referenced written communication because she "put" him [Mr. Lyon] "on notice" of Mr. Caudery's inappropriate conduct. Mr. Lyon indicated that he did not "want to" investigate Ms. Farris' complaints. Mr. Lyon also advised Ms. Farris that he had a "concern" about staying "neutral" during the investigation.

38. Mr. Lyon accused Ms. Farris of being in "competition" with Mr. Caudery, of engaging in "defensive" behavior in regards to Mr. Caudery, and of "undermining" Mr. Caudery's relationship with the Roanoke City Police Department in regards to certain loss prevention issues.

39. At one point during the interview, Mr. Lyon stated to Ms. Farris: "What's the big deal?"

40. At the conclusion of Ms. Farris' interview, she was advised by Mr. Lyon to "disappear" for the remainder of the week because Mr. Caudery was going to be "mad" at her. Mr. Lyon reminded Ms. Farris that Mr. Caudery was still Ms. Farris' supervisor.

41. Upon information and belief, the above-referenced "investigation" was a sham. On or around July 21, 2014, Mr. Lyon and a Human Resources representative

verbally advised Ms. Farris that Mr. Caudery admitted to making certain inappropriate comments to Ms. Farris. Mr. Lyon advised Ms. Farris: "A lot of this is 'he said she said.'"

42. Ms. Farris made additional complaints about Mr. Caudery's behavior during this July 21, 2014 meeting. Regardless, Mr. Lyon advised Ms. Farris that it was determined that Mr. Caudery had not violated any of Kroger's policies on sexual harassment or a hostile work environment.

43. Upon information and belief, Mr. Caudery was never disciplined in any fashion for his outrageous behavior or his retaliatory treatment of Ms. Farris.

44. Ms. Farris was advised that Mr. Caudery would continue to supervise her.

45. At that point, Ms. Farris considered herself to be constructively discharged from employment because her working conditions were intolerable.

46. Upon information and belief, Ms. Farris' working conditions would have remained intolerable because Mr. Caudery was never disciplined for his inappropriate conduct and because he would continue to directly supervise Ms. Farris.

47. Upon information and belief, Kroger's failure to complete an appropriate investigation, its failure to discipline Mr. Caudery, and/or its determination to force Ms. Farris to continue working under the supervision of Mr. Caudery were all actions made with the intent of forcing Ms. Farris to quit her employment. Alternatively, Ms. Farris' resignation/constructive discharge was a reasonably foreseeable result of Kroger's actions.

8

48. Ms. Farris was terminated from employment and/or constructively discharged because of her sex and/or in retaliation for refusing to engage in an inappropriate sexual relationship with her direct supervisor and/or for complaining about the sexual harassment and hostile work environment that was occurring in the workplace, all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT I: CLAIM FOR SEX DISCRIMINATION

49. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.
50. Ms. Farris is a female and is protected from sex discrimination by Title VII.
51. Kroger has discriminated against Ms. Farris by treating her differently from and less preferably than similarly situated male employees, including but not limited to Mr. Caudery, and subjecting her to discriminatory and differential treatment on the basis of her sex.
52. Kroger's policies, practices, and/or procedures have had a disparate impact on Ms. Farris with respect to the terms and conditions of her employment.
53. Kroger violated federal law by permitting a work environment to exist that was discriminatory to Ms. Farris, and other female Kroger employees, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.
54. Kroger would not have terminated/constructively discharged Ms. Farris'

employment, subjected Ms. Farris to discrimination, or taken the other discriminatory actions against Ms. Farris but for Ms. Farris' sex. Alternatively, Ms. Farris' sex was a motivating factor in Kroger's actions.

55. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is responsible for their actions based upon the doctrine of *respondeat superior*.

56. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

57. At all times material hereto, Kroger engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

58. The above-described acts by Kroger constitute discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT II: CLAIM FOR SEXUAL HARASSMENT

59. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

60. Ms. Farris is protected from sexual harassment by Title VII.

61. At all times material hereto, Kroger had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms.

10

Farris and other females.

62. Kroger violated federal law by permitting a work environment to exist that was sexually charged and discriminatory and hostile to Ms. Farris, and other women, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.

63. Ms. Farris was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, all constituting sexual harassment. This conduct altered the conditions of Ms. Farris' employment, unreasonably interfered with her job performance, and created an abusive, offensive, and hostile work environment.

64. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is responsible for their actions based upon the doctrine of *respondeat superior*.

65. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

66. At all times material hereto, Kroger engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

67. The above-described acts by Kroger constitute sexual harassment in violation

11

of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT III: CLAIM FOR HOSTILE WORK ENVIRONMENT

68. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

69. Ms. Farris is protected from subjection to a hostile work environment by Title VII.

70. At all times material hereto, Kroger had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. Farris and other females.

71. Kroger violated federal law by permitting a work environment to exist that was sexually charged and discriminatory and hostile to Ms. Farris, and other women, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.

72. Ms. Farris was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, all of which were so offensive as to alter the conditions of Ms. Farris' employment, unreasonably interfere with her job performance, and create an abusive, offensive, and hostile work environment.

73. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is

12

responsible for their actions based upon the doctrine of *respondeat superior*.

74. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

75. At all times material hereto, Kroger engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

76. The above-described acts by Kroger constitute sexual harassment/hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT IV: CLAIM FOR *QUID PRO QUO* SEXUAL HARASSMENT

77. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

78. Ms. Farris is protected from *quid pro quo* sexual harassment and a hostile work environment by Title VII.

79. At all times material hereto, Kroger had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. Farris and other females.

80. Kroger violated federal law by permitting a work environment to exist that was sexually charged and discriminatory and hostile to Ms. Farris, and other

13

women, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.

81. Ms. Farris was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, all constituting sexual harassment. This conduct altered the conditions of Ms. Farris' employment, unreasonably interfered with her job performance, and created an abusive and hostile work environment.

82. Submission to this conduct was made implicitly as a term or condition of Ms. Farris' employment.

83. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is responsible for their actions based upon the doctrine of *respondeat superior*.

84. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

85. At all times material hereto, Kroger engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

86. The above-described acts by Kroger constitute *quid pro quo* sexual harassment/hostile work environment in violation of Title VII of the Civil

14

Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

### COUNT V: CLAIM FOR RETALIATION RELATED TO *QUID PRO QUO* SEXUAL HARASSMENT

87. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

88. Ms. Farris is protected from retaliation related to *quid pro quo* sexual harassment and a hostile work environment by Title VII.

89. At all times material hereto, Kroger had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. Farris and other females.

90. Kroger violated federal law by permitting a work environment to exist that was sexually charged and discriminatory and hostile to Ms. Farris, and other women, by retaliating against Ms. Farris when she refused to acquiesce to Mr. Caudery's inappropriate conduct, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.

91. Ms. Farris was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, all constituting sexual harassment. This conduct altered the conditions of Ms. Farris' employment, unreasonably interfered with her job performance, and created an abusive and hostile work environment.

92. Submission to this conduct was made implicitly as a term or condition of Ms.

Farris' employment. When Ms. Farris rejected Mr. Caudery's advances and requests, Mr. Caudery's retaliated against Ms. Farris and utilized her refusal as the basis for certain employment decisions affecting Ms. Farris, including taking credit for her excellent work, sabotaging her work performance evaluations, providing her with undesirable and rigorous work assignments, and ultimately resulting in her termination/construction discharge from employment.

93. Ms. Farris experienced the above-referenced adverse employment actions within short temporal proximity to her refusal to submit to Mr. Caudery's sexual advances and requests for sexual favors.

94. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is responsible for their actions based upon the doctrine of *respondeat superior.*

95. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

96. At all times material hereto, Kroger engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

97. The above-described acts by Kroger constitute retaliation related to *quid pro quo* sexual harassment/hostile work environment in violation of Title VII of

16

the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

### COUNT VI: CLAIM FOR RETALIATION

98. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

99. Ms. Farris is protected from retaliation by Title VII.

100. At all times material hereto, Kroger had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. Farris and other females.

101. Kroger violated federal law by permitting a work environment to exist that was sexually charged and discriminatory and hostile to Ms. Farris, and other women, by failing to take prompt, effective remedial action related to this work environment, and by wrongfully terminating/constructively discharging Ms. Farris.

102. Ms. Farris engaged in the protected activity of making numerous complaints about sexual harassment and a hostile work environment, participated in an investigation regarding the same, and was subsequently targeted and ultimately terminated/constructively discharged from employment.

103. Ms. Farris was unlawfully terminated/constructively discharged from employment within short temporal proximity to her complaints and in direct retaliation for her complaints.

104. Because the actions of Kroger supervisory employees such as Mr. Caudery and Mr. Lyon were taken within the scope of their employment, Kroger is responsible for their actions based upon the doctrine of *respondeat superior*.

105. Kroger violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination, sexual harassment, and hostile work environment, and for complaining of the same.

106. As a direct and proximate result of the actions of Kroger, Ms. Farris has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

107. At all times material hereto, Kroger engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Farris so as to support an award of punitive damages.

108. The above-described acts by Kroger constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

WHEREFORE, Plaintiff Patricia Lowe Farris prays for judgment against Defendants The Kroger Company and Kroger Limited Partnership I and for equitable relief, compensatory damages, punitive damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and

18

Case 7:16-cv-00093-MFU   Document 1   Filed 03/02/16   Page 18 of 19   Pageid#: 18

attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

/s/ Thomas E. Strelka

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiff*